E. TALLEY GRAY
GA Bar 533660
3449-E Lawrenceville-Suwanee Road
Suwanee, GA 30024
Phone: (678) 428-4868
Fax: (800) 878-0259
Email: talleygray@yahoo.com

Attorney for Plaintiff

# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF GEORGIA
# ATLANTA DIVISION

| | |
|---|---|
| ERIN GOEHRIG, an individual, | **CASE NO**: **1:14-cv-01819-WSD-JCF** |
| Plaintiff, | |
| v. | **FIRST AMENDED COMPLAINT FOR VIOLATIONS OF THE FEDERAL FAIR DEBT COLLECTIONS PRACTICES ACT ("FDCPA")** |
| CACH, LLC, a Colorado Limited Liability Company; and SQUARETWO FINANCIAL COMMERCIAL FUNDING CORP., a Delaware Corporation, | |
| Defendants. | **JURY TRIAL DEMANDED** |

INDIVIDUAL COMPLAINT FOR DAMAGES

# I.

# **INTRODUCTION**

1. Plaintiff ERIN GOEHRIG, through her counsel, brings this action to challenge the acts of CACH, LLC (hereinafter "CACH"), and its parent company, SQUARETWO FINANCIAL COMMERCIAL FUNDING CORP. (hereinafter "SQUARETWO"), regarding attempts by the Defendants to unlawfully, maliciously and abusively collect a debt allegedly owed by Plaintiff, and this conduct caused Plaintiff damages.

2. Plaintiff makes these allegations on information and belief, with the exception of those allegations that pertain to a plaintiff, or to a plaintiff's counsel, which Plaintiff alleges on personal knowledge.

3. While many violations are described below with specificity, this Complaint alleges violations of the states cited in their entirety.

4. Any and all violations by Defendants as alleged in this Complaint were knowing, willful and intentional, and Defendants did not maintain procedures reasonably adapted to avoid any such violations.

INDIVIDUAL COMPLAINT FOR DAMAGES

## II.

## **JURISDICTION AND VENUE**

5. This action arises out of the Defendants' illegal efforts to collect a consumer debt from the Plaintiff, and multiple violations of the Federal Fair Debt Collection Practices Act, 15 U.S.C. §§ 1692 et seq. (hereinafter "FDCPA"). Jurisdiction of this Court arises pursuant to 28 U.S.C. § 1331 (Federal Question), 15 U.S.C. § 1692(k), and 28 U.S.C. §§ 1331 and 1337.

6. Because the Defendants transact business in the State of Georgia, and committed the acts that form the basis for this suit in the State of Georgia, this Court has personal jurisdiction over the Defendants for purposes of this action.

7. Venue is proper in the Northern District of Georgia pursuant to 28 U.S.C. § 1391, because the acts and transactions giving rise to this action as alleged in this complaint, in substantial part, occurred in this District.

## III.

## **PARTIES**

8. Plaintiff ERIN GOEHRIG is a natural person, an adult, and resides in the City of Suwanee, Gwinnett County, State of Georgia.

9. Plaintiff is informed and believes, and thereon alleges that Defendant CACH, LLC ("CACH") is a Colorado Limited Liability Company, or LLC, doing

business in the State of Georgia, and in particular, Gwinnett County.

10. Plaintiff is informed and believes, and thereon alleges that Defendant SQUARETWO FINANCIAL COMMERCIAL FUNDING CORP. ("SQUARETWO"), formerly known as COLLECT AMERICA, LTD., is a Delaware Corporation doing business in the State of Georgia, and in particular, Gwinnett County.

11. According to information SQUARETWO has stated on its web site (www.squaretwofinancial.com), "Square Two Financial is dedicated to making distressed assets whole. We focus on accelerating financial asset recovery through industry-leading security and compliance practices, award-winning technology, and our pioneering Partner Network, which works with consumers to remedy their outstanding debt."

12. SQUARETWO states in its March 1, 2013 publicly filed annual report (Form 10-K) to the U.S. Securities and Exchange Commission for the fiscal year ending December 31, 2012, that it "is a leading purchaser of charged-off consumer and commercial receivables tin the accounts receivable management industry." SQUARETWO also explains in its Form 10-K that "[o]ur primary business is the acquisition, management and collection of charged-off consumer and commercial accounts receivable that we purchase from financial institutions, finance and

leasing companies, in other issuers in the U.S. and Canada.  Charged-off accounts receivable, which refer to as 'charged-off receivables' or 'accounts', are defaulted accounts receivable that credit issuers have charged off as bad debt, but that remain subject to collection."  It goes on to state that "[t]he success of our business depends on heavily on our ability to find charged-off receivables for purchase, evaluate these assets accurately and acquire them at the appropriate pricing."  And "[o]ur business depends on the ability to collect on our purchased charged-off receivables."  SQUARETWO also states in its 10-K that "[f]rom 1999 to December 31, 2012, we have grown our business from $8.7 million to $608.0 million of annual cash proceeds on owned charged-off receivable, representing a compound annual growth rate of approximately 35%."

      13.    SQUARETWO also states in its March 1, 2013 10-K that "We operate our domestic charged-off receivables management business through a series of subsidiary entities, including CACH, LLC … These entities purchase charged off consumer receivables and place them with the United Network for collection."

      14.    Plaintiff is informed and believes, and thereon alleges that CACH is a 100% wholly-owned subsidiary of SQUARETWO, and Plaintiff further alleges, on information and belief, that the Defendants are engaged in the fraudulent transfer of CACH's assets in order to avoid liability in this action.

INDIVIDUAL COMPLAINT FOR DAMAGES

15. Plaintiff is informed and believes, and thereon alleges that CACH has no employees, and has not any employees for years. All acts performed on behalf of CACH are, in fact, performed by employees of SQUARETWO.

16. In particular, SQUARETO is responsible for hiring and directing collection lawyers to pursue collection of charged-off receivables (including the commencement of litigation) in the name of CACH.

17. SQUARETWO's March 1, 2013 Form 10-K confirms that SQUARETWO supervising the attorneys collecting on behalf of CACH, where its states: "In the U.S. we utilize our Partners Network, which has nationwide coverage. Individual law firms within our Partners Network will be referred to as a "franchise" or "Partner" herein … Once an account is designated for suit we typically place it with our Partners Network. In addition, we have assembled a select network of third party collection law firms within the United Network to provide us with legal collections capabilities in jurisdictions not covered by our Partners Network or where the Partners Network capability is insufficient to meet our needs. Similar to nonlegal collections, we pay our franchises and third party collection law firms for their collection efforts based on their performance subject to compliance with our numerous operation and regulatory standards. In addition to these collection fees, we typically pay court costs and related fees on accounts

placed for legal collection … Our franchises typically work exclusively for SquareTwo and our agreements do not obligate us to place debt with any franchise, but, at the same time, prohibit the franchises from providing collection services to a third party without our prior approval.  This exclusivity, combined with our performance-driven model, motivates each Partner to deliver results, which we believe increases collection rates compared to the traditional large-scale collection agency platform."

18. The managers of CACH are, or have been, according to filings made by CACH with the offices of various Secretaries of State in various jurisdictions, Paul A. Larkins and P. Scott Lowery.

19. Scott Lowery is also the founder and is (or has been) the Chairman of the Board of SQUARETWO.  Paul A. Larkins is (or has been) its President and Chief Executive Officer.

20. SQUARETWO makes all decisions relating to the acquisition of debt portfolios, and is responsible for raising capital for the acquisition of debt portfolios.

21. SQUARTWO acquires debts with a face value of more than $3 billion per year.

INDIVIDUAL COMPLAINT FOR DAMAGES

22. Plaintiff is informed and believes, and thereon alleges that Defendants CACH and SQUARETWO are related companies or "alter egos" of one another, and possess such a unity of interest that it would be unjust to prevent Plaintiff's recovery against SQUARETWO for the CACH's unlawful actions detailed herein.

23. Defendants CACH and SQUARETWO are entities that use instrumentalities of interstate commerce (including, but not limited to the U.S. Postal Service) in a business, the principal purpose of which is the collection of debts, or that regularly collect, or attempt to collect, directly or indirectly, debts owed or due, or asserted to be owed or due to another, and are therefore "debt collectors" as that phrase is defined by 15 U.S.C. § 1692a(6).

24. Plaintiff ERIN GOEHRIG is a natural person who is obligated, or allegedly obligated to pay a debt, and is a "consumer" as that term is defined by 15 U.S.C. § 1692a(3).

## IV.

## GENERAL ALLEGATIONS

25. As noted in Paragraph 11, above, Defendant CACH is a wholly owned subsidiary of Defendant SQUARETWO, and is well known nationwide for purchasing defaulted credit accounts. CACH also transacts business from time to time under the names "CACV" or "Collect America." As noted in recent court

INDIVIDUAL COMPLAINT FOR DAMAGES

rulings, CACH has no employees and owns no assets, but hires attorneys to collect the debts it purchases. It also has a history of filing state court collection actions despite lacking proper evidence, or having an unclouded chain of title to show that it truly owns its debts. See <u>CACH, LLC v. Askew,</u> 358 S.W. 3d 58 (Mo. 2012).

26. Further, CACH has been found to have filed its collection actions, and to have made feeble attempts to assert standing to sue, based on the use of a vague, nebulous, and highly suspect document entitled *"Bill of Sale and Assignment of Loans"* that makes no direct reference to particular debtors or specific account numbers, and instead refers only to the sale of certain unspecified loans referenced strictly in general terms in a skeletal "loan schedule." See <u>CACH, LLC v. Fatima</u>, 936 NYS 2d 58 (Dist. Ct., Nassau County, 2011).

27. Additionally, a recent Georgia decision mirrored the above-referenced findings of sister courts in the states of Missouri and New York, when it ruled that CACH failed to produce any assignment, chain of title or other document showing that it was the "real party in interest" with standing to sue on an alleged credit card debt. <u>Wirth v. CACH LLC</u>, 685 S.E. 2d 433 (Ga. Ct. App. 2009).

28. Further, a recent investigation by the trade publication "American Banker" revealed that CACH routinely has problems proving ownership of the debts it acquires because of its frequent use and reliance on a document called a

INDIVIDUAL COMPLAINT FOR DAMAGES

"forward flow" agreement – in which CACH agrees to buy a fixed amount of debt over a fixed period of time for a predetermined price.  *See* Jeff Horwitz, "Bank of America Sold Card Debts to Collectors Despite Faulty Records," American Banker, March 29, 2012.

29.     As American Banker noted during the course of investigation, while reviewing one particular "forward flow" agreement between CACH, on the one hand, and Bank of America, on the other:

a) CACH acquires the debts from Bank of America on a no warranty, "as is" basis;
b) CACH initially receives no documentation to support the debts;
c) CACH might not <u>ever</u> be able to acquire supporting documentation from Bank of America as to the debts, even if requested;
d) Some accounts may have been extinguished by bankruptcy; and
e) The agreement warned that some balances might be inaccurate.

But despite these issues, as American Banker observed, CACH still moves forward with filing thousands of collection actions across the country, stemming from debts obtained from Bank of America through flawed documentation.

30.     In the case at bar, at some point prior to June 12, 2013, Plaintiff ERIN GOEHRIG is alleged to have incurred financial obligations to BANK OF AMERICA, N.A. through the use of a credit card.

31.     These financial obligations were primarily for personal, family, or household purposes, and were therefore a "debt" as that term is defined at 15

INDIVIDUAL COMPLAINT FOR DAMAGES

U.S.C. § 1692a(5).

32. Subsequently, but before June 12, 2013, the alleged debt was allegedly assigned, placed, or otherwise transferred to Defendant CACH for collection.

33. On June 12, 2013, Defendant CACH filed a lawsuit in the State Court of Gwinnett County, State of Georgia, against Plaintiff ERIN GOEHRIG claiming non-payment of a debt, based upon the above-referenced alleged debt to BANK OF AMERICA, N.A.  The case number of the above June 12, 2013 Complaint was 13 C-03750-3, and a copy of this June 12, 2013 Complaint is attached hereto as Exhibit "1".

34. The first attachment to the aforesaid June 12, 2013 State court Complaint was an *"Affidavit of Sale and Certification of Debt"* executed by Justin S. Taro, a purported "Bank Officer" of an entity known as FIA Card Services, N.A. In his affidavit (attached to the State Court Complaint as Exhibit "A"), Mr. Taro stated that CACH, LLC was an assignee of FIA Card Services, N.A., and further stated, in paragraph 4(b) of his affidavit, that pursuant to a "card member agreement" with FIA Card Services, Plaintiff ERIN GOEHRIG had a balance "due and payable" to CACH in the amount of $6,100.086, as of a "charge off date" of June 30, 2010.

INDIVIDUAL COMPLAINT FOR DAMAGES

35.  In fact, at **no time** has Plaintiff ERIN GOEHRIG ever been a party to a written "card member agreement" (or any other type of written agreement) with FIA Card Services, N.A.  Additionally, at no time has Plaintiff ever been a party to any such written agreement with CACH, LLC, or with Bank of America.

36.  Further, at all times during the pendency of the State Court litigation involving Case No. 13 C-03750-3 (ultimately dismissed by both parties <u>without prejudice</u> on May 21, 2014), CACH, LLC **never** produced any document in the nature of a written "card member agreement", or which demonstrated a "meeting of the minds" between Plaintiff ERIN GOEHRIG on the one hand, and FIA Card Services, N.A (and/or CACH, LLC, and/or Bank of America) on the other.

37.  As shown by CACH's July 12, 2013 Complaint filed in State Court action 13 C 03750-3, CACH demanded recovery of prejudgment interest from Plaintiff ERIN GOEHRIG at the rate of 23.24% per annum, despite the fact that:

   a) Plaintiff ERIN GOEHRIG never signed a contract with CACH, FIA Card Services, N.A., Bank of America, or any other entity that authorized CACH to charge and demand such interest;

   b) CACH had no authority under any federal or state statute to allow the charging of such interest;

   c) <u>Prior</u> to opening of the subject credit card account, Plaintiff ERIN GOEHRIG was never provided any disclosures which correctly revealed the full cost of her credit, including but not limited to an alleged right to demand prejudgment interest at the rate of 23.24% per annum; and

INDIVIDUAL COMPLAINT FOR DAMAGES

      d)    <u>Subsequent</u> to the opening of the subject credit card account, Plaintiff ERIN GOEHRIG was never provided any disclosures (including the mandatory disclosures required on monthly billing statements), which correctly revealed the full cost of her credit, including but not limited to an alleged right to demand prejudgment interest at the rate of 23.24% per annum.

38.    Notably, while State Court action 13 C 03750-3 was pending, CACH filed a pleading in March, 2014 entitled *"Plaintiff's First Motion in Limine to Admit Evidence"* (a copy of which is attached as Exhibit "2"). Among the exhibits attached by CACH, LLC to this pleading was a document entitled *"Bill of Sale and Assignment of Loans"* on Bank of America letterhead – and which was similar to, if not identical in nature to a document mentioned in paragraph 16 of this Complaint, and which was the basis for a New York state court's denial of summary judgment for this alleged creditor in the above-cited case of <u>CACH, LLC v. Fatima</u>, 936 NYS 2d 58 (Dist. Ct., Nassau County, 2011).

39.    The document entitled *"Bill of Sale and Assignment of Loans"* filed by CACH in State Court action 13 C-03750-3 was submitted with the intent of establishing the alleged creditor's standing in the lawsuit, and possibly laying a foundation for the admissibility of a purported "business record" into evidence. But as was the case with the identically-titled document that this alleged creditor tried to file in <u>CACH, LLC v. Fatima</u>, this particular *"Bill of Sale and Assignment*

INDIVIDUAL COMPLAINT FOR DAMAGES

*of Loans"* made no reference whatsoever to particular names of debtors, or to any specific account numbers.  Moreover, the original credit issuer (Bank of America) was NOT a party to the assignment, as it was solely between FIA Card Services, N.A., as the alleged "assignor", and CACH, LLC, as the alleged "assignee".

40.	The claim by CACH in paragraph 2 of its State Court Complaint of June 12, 2013 – *in which CACH alleged it was the "Original Creditor", or by assignment, the "successor in interest in and to Defendant's BANK OF AMERICA account"* – was knowingly false and completely unsupported by the alleged creditor's own record evidence.  Further, the fraudulent attempt by CACH to collect an alleged credit card debt from Plaintiff ERIN GOEHRIG, in which CACH put forth false and willfully misleading representations as to the origin and ownership of the alleged debt, was a violation of the Federal Fair Debt Collection Practices Act, 15 U.S.C. §§ 1601 et seq.

41.	Additionally, the attempt by CACH, in its June 12, 2013 State Court Complaint, to collect pre-judgment interest from Plaintiff ERIN GOEHRIG at the rate of 23.24 percent per annum – *despite the fact that CACH did **not** hold rights under any contract with Plaintiff ERIN GOEHRIG (or under any statute) giving CACH, Bank of America, or any other party the right to charge a other rate of interest beyond 7.5 percent (as specifically stated on billing statements delivered*

INDIVIDUAL COMPLAINT FOR DAMAGES

*by Bank America to Plaintiff)* – was a violation of the Federal Fair Debt Collection Practices Act, 15 U.S.C. §§ 1601 et seq.

42. Plaintiff is informed and believes, and thereon alleges, that for the purpose of avoiding liability for CACH's unlawful conduct as alleged herein, CACH purposely holds no assets and has no employees, and fraudulently transfers assets to its parent corporation, SQUARETWO.

## FIRST CAUSE OF ACTION

## (Violations of the FDCPA by CACH and SQUARETWO)

43. Plaintiff ERIN GOEHRIG repeats, re-alleges, and incorporates by reference each and every allegation contained in paragraphs 1 through 32, above.

44. Based on information and belief, Defendants CACH and SQUARETWO have violated the Fair Debt Collections Practices Act ("FDCPA").

45. The Defendants' violations include, but are not limited to the following:

(a) **Violation of 15 U.S.C. § 1692e**: By making false, deceptive, or misleading representations in connection with the collection of a debt;

(b) **Violation of 15 U.S.C. § 1692e(2)**: By misrepresenting the character, amount, or legal status of an alleged debt;

(c) **Violation of 15 U.S.C. § 1692f**: By using an unfair or

INDIVIDUAL COMPLAINT FOR DAMAGES

unconscionable means to collect, or attempt to collect an alleged debt; and

(d) **Violation of 15 U.S.C. § 1692f(1)**: By collecting a debt, or attempting to collect a debt not authorized by the agreement creating the debt, or permitted by law *(including, specifically, demanding a pre-judgment rate of interest greater than the rate originally disclosed to a credit card holder, or referenced on the card holder's credit card statements)*.

46. As a direct and proximate result of each and every violation of the FDCPA committed by Defendants CACH and SQUARETWO, Plaintiff ERIN GOEHRIG is entitled to actual damages pursuant to 15 U.S.C. § 1692k9(a)(1); statutory damages in an amount up to $1,000.00 for each violation pursuant to 15 U.S.C. § 1692k(a)(2)(A); and recovery of reasonable attorneys' fees and costs pursuant to 15 U.S.C. § 1692k(a)(3) from both Defendants.

## PRAYER FOR RELIEF

Wherefore, based upon the allegations set forth above, Plaintiff ERIN GOEHRIG prays that judgment be entered against Defendants CACH and SQUARETWO, and hereby demands the following relief:

(1) An award of actual damages for violations of the Fair Debt Collection Practices Act ("FDCPA"), pursuant to 15 U.S.C. § 1692k9(a)(1), against Defendants CACH and SQUARETWO, and for the Plaintiff;

INDIVIDUAL COMPLAINT FOR DAMAGES

(2)   An award of statutory damages for violations of the Fair Debt Collection Practices Act ("FDCPA"), pursuant to 15 U.S.C. § 1692k9(a)(2)(A), against Defendants CACH and SQUARETWO, and for the Plaintiff;

(3)   An award of costs of litigation and reasonable attorneys' fees, pursuant to 15 U.S.C. § 1692k(a)(3) against Defendants CACH and SQUARETWO, and for the Plaintiff; and

(4)   Such other and further relief as this Court may deem just and proper.

## JURY DEMAND

(1)   Plaintiffs demand a trial by jury.

DATED:   11/25/2014

BY:   /s/ E. Talley Gray
      E. Talley Gray
      Attorney for Plaintiffs

INDIVIDUAL COMPLAINT FOR DAMAGES